**NOT FOR PUBLICATION OR CITATION**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND

CIVIL ACTION NO. 06-CV-084-HRW

JULIO RAMON ORTEGA  PETITIONER

VS:  **MEMORANDUM OPINION AND ORDER**

SHARON MAYNARD, ET AL.  RESPONDENTS

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

Petitioner Julio Ramon Ortega, who is currently confined at the Federal Correctional Institution in Ashland, Kentucky ("FCI-Ashland"), has filed a *pro se* petition for habeas corpus under 28 U.S.C. §2241 and has paid the requisite filing fee.

This matter is before the Court for initial screening. 28 U.S.C. §2243; *Demjanjuk v. Petrovsky*, 612 F. Supp. 571 (N.D. Ohio 1985) (citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), *cert. denied*, 400 U.S. 906 (1970); *accord Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)). This is a *pro se* proceeding and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972).

CLAIMS

The petitioner claims that the respondents have misinterpreted Bureau of Prisons ("BOP") Program Statement 5100.07, in denying him a transfer. He claims that he is eligible for transfer to a federal prison closer to [his] home under the BOP's "closer to home" transfer policy, but the BOP wrongly denied the request by relying on the "nearer release" transfer policy.

## FACTUAL ALLEGATIONS

The petitioner has submitted a typewritten, self-styled petition and attached documents exchanged in the BOP administrative process. The Court summarizes the factual allegations contained therein as follows.

The petitioner is a Cuban national currently serving a term of imprisonment at FCI-Ashland, which is more than 500 miles from his Florida home. On December 15, 2005, he requested, via the BOP administrative remedy process,[1] a "closer to home" transfer. He claimed he was eligible for the transfer under a portion of Program Statement ("P.S.") 5100.07, Security Designation and Custody Classification Manual, which he recites, in pertinent part, as follows:

> . . . Redesignation of an inmate should generally result in a move closer to an inmate's release destination, consistent with the inmate's security level. In order to attempt to place an inmate near his or her release residence, redesignations should be made without regard to regional boundaries. . . .
>
> Redesignations between same security level institutions are discouraged, except for CIM purposes, closer to home purposes, or other unusual circumstances. A "nearer to release" transfer should be incorporated with "lesser security" transfers whenever possible. Once the inmate has been transferred within 500 miles of his or her release residence, no further referrals should be made as a "nearer to release" transfer consideration. . . . [I]nmates will be considered for a nearer to release transfer after serving 18 months of clear conduct.

P.S. 5100.07, Chapter 10, Routine transfers, at 4(d).

The petitioner's request was denied at every level. Exhibits A - D. Ortega claims that

---

[1] See 28 C.F.R. §542.10-.19. Section 542.13(a) demands that an inmate first informally present his complaint to the staff [BP-8 form], thereby providing them with an opportunity to correct the problem, before filing a request for an administrative remedy. If the inmate cannot informally resolve his complaint, then he may file a formal written request to the Warden [BP-9]. See §542.14(a). If the inmate is not satisfied with the Warden's response, he may appeal to the Regional Director [BP-10], and, if not satisfied with the Regional Director's response, the inmate may appeal that decision to the Office of General Counsel [BP-11]. See §542.15.

the reasons for the denials are incorrect, factually. When the BOP responded that he was not eligible for a transfer, it wrongly relied on (1) the afore-stated policy on "near to release" transfers to deny him a transfer, when he had actually asked, instead, "for a closer to home" transfer; (2) his citizenship status as an alien subject to proceedings before the Bureau of Immigration and Customs Enforcement ("BICE" or "ICE"),[2] although the plaintiff claims to be a permanent resident and has attached a photocopy of his identification card as Exhibit F; and (3) the policy that aliens with immigration detainers cannot be granted closer to home or nearer release transfers, but this petitioner claims that there is no detainer against him.

The petitioner asks that the Court issue an order with the correct interpretation of P.S. 5100.07, Chapter 10, Routine transfers, at 4(d).

## DISCUSSION

This case is like one in a sister court earlier this year. In *Antonelli v. Sanders*, 2006 WL 667964 (E.D. Ark. March 15, 2006), a BOP prisoner contended that by keeping him 559 miles away from his home, the BOP had violated its own "rules, regulations, policy and Program Statement 5100." The district court studied the same provision of P.S. 5100.07 as quoted *infra*, noted that a prisoner has no constitutional right to placement in a particular penal institution, and summarily dismissed the §2241 petition, on the ground that the claim of a violation of that program statement or BOP regulations or policy "does not implicate the Constitution." *Id* at *3.

---

[2] The Immigration and Naturalization Service ceased to exist on March 1, 2003, and most of its functions were transferred to either the Bureau of Border Security or Bureau of Immigration and Customs Enforcement, both units of the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub.L. No. 107-296, 116 Stat. 2135. The acronym for the immigration arm, "BICE" and "ICE," are used interchangeably.

3

This Court agrees. It is well settled that with regard to prison transfers and classification status, prisoners have no constitutional entitlement to invoke due process claims. *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Marchesani v. McCune*, 531 F.2d 459 (10th Cir.), *cert. denied*, 429 U.S. 846 (1976) (inmates have neither protected liberty interests nor property interests in custodial classification). With the discretion provided and delegated by the Attorney General, under 18 U.S.C. §321(b), the BOP may direct a prisoner's confinement in any available facility and freely transfer a prisoner from one facility to another. Director of the BOP has developed the classification procedure in P.S. 5100.07. *See* 18 U.S.C. §4081; 28 C.F.R. §0.96. *See e.g., Peck v. Hoff*, 660 F.2d 371 (8th Cir. 1981).

The Supreme Court of the United States has specifically held that transfers and prison assignments are functions wholly within the discretion of the BOP. *See Olim v. Wakinekona*, 461 U.S. 238 (1983); *Meachum v. Fano*, 427 U.S. 215, 225 *reh'g denied*, 429 U.S. 873 (1976) (holding that "[n]either, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system," and noting that the fact "[t]hat life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules"); *Olim v. Wakinekona, infra.*

In short, Congress has given federal prison officials full discretion to control the conditions of confinement, including location. Neither §3621(e), nor the BOP's Program Statement, nor the Code of Federal Regulations contain explicit mandatory language or standards

4

limiting the BOP's discretion and thereby giving rise to a protected liberty interest. Accordingly, Petitioner does not possess a statutorily protected expectation interest in transfers.

Furthermore, being housed in a prison miles from his home does not constitute an "atypical and significant hardship" on Petitioner Ortega in relation to the ordinary incidents of prison life. *See Sandin v. Conner,* 515 U.S. 472, 482 (1995); *Franklin v. District of Columbia,* 163 F.3d 625, 634-35 (D.C. Cir.1998) (Issues of housing and transfers are issues which occur within the "day-to-day management of prisons."). Nothing in the record indicates that Petitioner's conditions of confinement at FCI-Ashland are atypical or resulted in a significant hardship.

The agency's program statements are only "internal agency guidelines" that are not "subject to the rigors of the [Administrative Procedures Act ("APA")], including public notice and comment." *Jacks v. Crabtree,* 114 F.3d 983, 985 n.1 (9th Cir.1997) (quotation omitted); *see Reno v. Koray,* 515 U.S. 50, 61 (1995) (describing a bureau of prisons program statement as an "internal agency guideline . . . akin to an 'interpretive rule' that do[es] not require notice and comment' ") (quoting *Shalala v. Guernsey Mem'l Hosp.,* 514 U.S. 87, 99 (1995)).

Bureau of Prisons program statements "create entitlements (meaning something that may be enforced to prevent substantive transgressions) only if adopted in one of the ways the APA prescribes . . . ." *Miller v. Henman,* 804 F.2d 421, 426 (7th Cir.1986). Petitioner Ortega does not allege that the program statement at issue was adopted under APA procedures or that it was applied in a fashion that was discriminatory or otherwise unconstitutional. Therefore, there is no constitutional or statutory or regulatory claim herein.

5

Even were the Court to reach the merits of the petitioner's claims, he would not be entitled to relief on the record he provides. The program statement which he quotes does not set up separate procedures or policies for "nearer release" versus "closer to home" transfers. In fact, in a similar case before this Court earlier this year the Associate Warden of FCI-Ashland wrote "[A] nearer release and closer to home transfer are one in the same." *Cruz v. Barada*, Ashland No. 05-CV-129-HRW, Record Nos. 1, 5.

As to the "wrong" reasons for the BOP's denying the petitioner a transfer, a closer reading of the record shows that he was not denied a transfer because the BOP considered the wrong request, nor because the petitioner was wrongly classified as an alien, nor because the BOP believed, wrongly, that he had a standard immigration detainer lodged against him. As the warden explained to him, Petitioner's public safety factor was such that he was eligible for neither.

With regard to the petitioner's designation as an alien, his own exhibits flesh out that issue. One is an October 18, 2004 Detainer Action Letter to ICE, which shows that FCI-Ashland personnel did lodge such a notice, informing the immigration agency that the prison has possession of a report that Ortega was born in Cuba and asking for a response as to his status. Exhibit E. As is revealed in documents exchanged during exhaustion of the administrative remedy process, FCI-Ashland's staff made another inquiry upon the petitioner's request for the transfer, but by the Spring of 2006, his "citizenship status has not yet been determined." The National Office of the BOP wrote, "Should ICE determine you are not subject to deportation, your transfer request may be reconsidered by staff. You are not entitled to a transfer and P.S.

6

5100.07 does not require . . . [a] transfer." Exhibit D.

Because Petitioner Ortega is not in custody in violation of the Constitution or laws or treaties of the United States, he is not entitled to relief under 28 U.S.C. §2241 and his petition will be denied.

## CONCLUSION

Accordingly, the Court being advised, **IT IS ORDERED** that this action is **DISMISSED,** *sua sponte*, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the named respondents.

This 6th day of July, 2006.

HENRY R. WILHOIT, JR.
SENIOR U. S. DISTRICT JUDGE